IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRAXTON, *et al.*,

    Plaintiffs,

v.      Civil Action No. 8:23-cv-00213-PX

CHESAPEAKE UROLOGY
ASSOCIATES, LLC, *et al.*,

    Defendant.

\*\*\*

## MEMORANDUM OPINION

Pending in this employment discrimination action is Defendant Chesapeake Urology Associates, LLC's ("CUA")[1] motion to sever and motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). ECF No. 10. The matter has been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is GRANTED and the motion to sever is DENIED as moot.

### I. Background

On January 26, 2023, Plaintiffs Mia Braxton and Theresa Rios filed suit against CUA. ECF No. 1. The Complaint avers that CUA failed to provide Braxton reasonable accommodations in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and companion state law (Count I). *Id.* ¶¶ 79–85. Braxton also accuses CUA of creating a hostile work environment on account of her race, and retaliation for her having engaged in protected activity, both in violation of Title VII, 42 U.S.C. §§ 2000e *et. seq.* (Counts II–III). *Id.* ¶¶ 86–101. Rios alleges that she had been subjected to a hostile work environment

---

[1] CUA states Plaintiffs have filed suit against the wrong corporate entity. ECF No. 10-1 at 8 n. 1. Nonetheless, CUA moves to dismiss the Complaint. ECF No. 10. If CUA believes substitution of parties is warranted, it should file a motion to that effect.

on account of her race and was the victim of CUA's retaliation prohibited under Title VII and Maryland State Law (Counts II–III).  *Id.*

After CUA moved to dismiss all claims or alternatively to sever Braxton and Rios' cases, ECF No. 10, Rios conceded that her claims are time-barred and consented to dismissal of her claims with prejudice.  ECF No. 11 at 1.  Braxton likewise withdrew her ADA claim (Count I) for failure to exhaust administrative remedies.  *Id.*  The Court will grant these requests.  Also, because Rios has conceded dismissal, CUA's motion to sever is moot.  This leaves only CUA's challenge to Braxton's hostile work environment and retaliation claims (Counts II–III).

The Complaint facts pertinent to Braxton's surviving claims are as follows.  Braxton is a 56-year-old African American woman who has enjoyed a long tenure as a urodynamicist.  ECF No. 1 ¶¶ 8, 13.  At some point, CUA hired Braxton to join its medical practice.  *Id.* ¶ 15.  After Braxton came on board, CUA hired Linda Marinucci as a site manager for the CUA location where Braxton worked.  *Id.* ¶ 15.

According to the Complaint, Marinucci "routinely sp[oke] in a slow and demeaning manner to African American employees."  *Id.* ¶ 12.  Marinucci also told another employee that she "want[ed] [Braxton gone" despite Braxton's excellent work history.  *Id.* ¶ 15.  Marinucci called Braxton "toxic," *id.* ¶ 16, and slighted Braxton by purchasing $25 gift cards with company money for all employees except for Braxton.  *Id.* ¶ 21.  At some point, Marinucci "blocked" Braxton's availability on the schedule to see patients; instead, CUA made Braxton work as a medical assistant as coverage for an employee on leave.  *Id.* ¶¶ 17, 26–27.  Braxton told CUA that she could not cover this position because her pre-existing back condition made it impossible for her to stand for long periods as the job required.  *Id.* ¶¶ 27–29.

The Complaint broadly avers that an unnamed Director of Operations "tacitly condoned" Marinucci's behavior, although nothing explains what is meant by this averment. *Id.* ¶¶ 11, 12, 16. The Complaint also avers that CUA has promoted white employees over more senior and qualified African American employees. *Id.* ¶ 9. But again, the Complaint is devoid of any detail to support this allegation or tie it to Braxton's claims.

At some point, Braxton reported Marinucci's actions to her supervisors and the human resources department. *Id.* ¶ 18. Braxton was next told by someone that she could either transition to a lower paid position or go part-time because CUA did not have enough work for her as a urodynamicist. *Id.* When Braxton refused either option, CUA unilaterally transitioned her to part-time status where she received about two hours of work per week. *Id.* The reduction of hours jeopardized her retirement benefits, life insurance, and short-term disability. *Id.* Someone at CUA also directed Braxton not to seek work at other CUA worksites even though appropriate positions and work were available. *Id.* ¶¶ 17, 19.

On another occasion, Braxton asked a coworker to cover Braxton's upcoming appointment with a patient who had previously called Braxton the "N-word." *Id.* ¶¶ 22–23. Although the coworker agreed and did see the patient, some unidentified CUA employee falsely wrote Braxton for refusing to care for a patient. *Id.* ¶¶ 23–24. Last, Braxton avers that because CUA has deleted relevant emails, she cannot plead additional facts without discovery. *Id.* ¶ 20.

## II.     Motion to Dismiss for Insufficient Service of Process

CUA first argues that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. When a defendant challenges service of process, the plaintiff must establish that she complied with the service requirements of Federal Rule of Civil Procedure 4. *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006).

Rule 4(m) provides that if the defendant "is not served within 90 days after the complaint is filed, the Court . . . must dismiss the action without prejudice . . . [b]ut if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

"Good cause" typically amounts to "the interference of some outside factor [that] prevented the otherwise-diligent plaintiff from complying" with Rule 4(m). *See Clayton v. Islas Transportation, LLC*, No. 8:18-03964, 2019 WL 405671, at *3 (D. Md. Oct. 1, 2019) (quoting *Uzoukwu v. Prince George's Cmty. Coll. Bd. of Trs.*, No. DKC 12-3228 2013 WL 3072373, at *2 (D. Md. June 17, 2023)). Inadvertence or heedlessness does not suffice. *See id.* (citing *Burns & Russell Co.. v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 439 n. 9 (D. Md. 2001) (citation omitted)). However, where a plaintiff's attempts at service provided defendant actual notice of the pending action, the court may "construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *O'Meara*, 464 F. Supp. 2d at 476 (citing *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963); *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)). Or the court may "extend the time period for service even when good cause has not been shown." *Gelin v. Shuman*, 35 F.4th 212, 214 (4th Cir. 2022).

Braxton admits that the Complaint was untimely served on May 18, 2023, and so she missed the 90-day service deadline by 22 days. ECF No. 11 at 4. She contends, however, that good cause exists to excuse late service because of "circumstances beyond [her] control." *Id.* at 5. Specifically, Braxton blames the Clerk of the Court for not issuing the summons until 60 days after the Complaint had been filed. *Id.* at 4. True, the summons did not issue until March 23, 2023, but the delay can hardly be laid at the Clerk's feet. Rather, Plaintiff's counsel had let his membership to this bar lapse and could not represent Plaintiffs until his membership was

4

reinstated. *See* ECF Nos. 2, 3. The Clerk advised Plaintiffs and counsel as much, but because the summons directed CUA to serve its answer or response on that same counsel, the summons could not issue. *See id.*; ECF No. 1-4. Once counsel renewed his bar membership and entered his appearance, the Clerk issued the summons that same day. ECF Nos. 4, 5. Thus, the delay in the summons' issuance was the fault of counsel, not the Clerk.

Braxton's counsel next blames the delay on some "miscommunication" with his longtime process server regarding the date on which service was made. ECF No. 11 at 4. Although the Court does not totally understand counsel's point, he appears to suggest that the process server reported to counsel service completion for another matter on April 6, 2023, which counsel mistakenly believed was for this matter. *Id.* In any event, the Court does not find counsel or the process server's error to constitute good cause. *Cf. Gelin*, 35 F.4th at 218 (holding that plaintiff did not demonstrate good cause when the process server searched for defendants' addresses once and waited ten months before seeking an extension of time); *Hoffman v. Baltimore Police Dept.*, 379 F. Supp. 2d 778, 786 (D. Md. 2005) (collecting cases and holding "[t]ypically for a court to find good cause, some extraordinary circumstance must have impeded service" such as, defendant was evading it, plaintiff could not obtain defendant's address, or court personnel misdirected plaintiff).

Nonetheless, the Court will extend service to the date on which the Complaint had been served. In so deciding, the Court considers several non-exhaustive factors, to include (1) possibility of prejudice to the defendant, (2) the length of delay and its impact on the proceedings, (3) the reasons for delay and whether it was within the plaintiff's control, (4) whether the plaintiff sought an extension before the deadline, (5) the plaintiff's good faith, (6) whether the plaintiff is pro se, (7) prejudice to the plaintiff, and (8) whether time has previously

5

been extended. *Scovens v. Univ. of Maryland. Fac. Physicians, Inc.*, No. 1:23-01080-JMC, 2023 WL 5234966, at *2 (D. Md. Aug. 14, 2023) (quoting *Coomes v. Moran*, No. ELH-22-2639, 2023 WL 3847427, at *4 (D. Md. June 6, 2023)). This case is in its infancy and the delay in service has been brief. *See* ECF No. 10-1 at 17. CUA has demonstrated no prejudice arising from the brief extension of service; the delay has not impacted the timing of the proceedings; and CUA has been given ample opportunity to challenge the claims on their merits. *See Scovens*, 2023 WL 5234966, at *2; ECF No. 10. Therefore, the Court extends the service deadline by 22 days and declines to dismiss the Complaint under Rule 12(b)(5).

### III. Motion to Dismiss for Failure to State a Claim

Turning next to CUA's motion to dismiss for failure to state a claim, this motion tests the legal sufficiency of the Complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). When reviewing the motion brought pursuant to Rule 12(b)(6), the Court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Nor can courts "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true,

must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

### A. Failure to Exhaust Administrative Remedies

CUA first contends that the hostile work environment and retaliation claims must be dismissed for failure to exhaust administrative remedies under Title VII and applicable state statutes.[2] Specifically, CUA maintains that Braxton's allegations in the formal EEOC Charge (the "Charge") references solely Marinucci having "talked down" to Braxton, and CUA's reduction of Braxton's work hours. ECF No 10-1 at 20; *see* ECF No. 10-4. Thus, says CUA, Braxton's claims in this case must be similarly limited.

For a civil claim to proceed, the claim first must be raised in the formal charge. *See Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019) (holding that failure to exhaust is not jurisdictional). A claim is sufficiently raised and preserved if the formal charge provides reason for the EEOC to perform a reasonable investigation into the allegations that eventually become the subject of the civil suit. *See Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (quoting *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)); *compare Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (reasonable investigation of discrete incidents in the formal EEOC charge would not have led to discovering a "continuous pattern" of long-term harassment from co-workers) *with Smith v. First Union Nat'l Bank*, 202

---

[2] The Complaint asserts violations of nonspecific "Maryland State Law." ECF No. 1 at 12, 13, 15. Like CUA, the Court assumes Plaintiffs intend to assert violations of the Maryland Fair Employment Practices ("MFEPA"), Title VII's state law analogue. *Doe v. Catholic Relief Servs.*, 529 F. Supp. 3d 440, 446 (D. Md. 2021); *see* ECF No. 10-1 at 17 n. 7. The Court considers Title VII and MFEPA claims in *pari materia* and so will analyze them together. *See Sorto v. AutoZone, Inc.*, 821 Fed. Appx. 188, 191 (4th Cir. 2020); *Barreto v. SGT, Inc.*, 826 Fed. Appx. 267, 271 (4th Cir. 2020); *see also Marshall v. Anne Arundel Cnty.*, No. ELH-18-74, 2019 WL 568676, at *9 (D. Md. Feb. 12, 2019) (Title VII and MFEPA exhaustion analyzed together).

F.3d 234, 247–48 (4th Cir. 2000) (holding plaintiff exhausted administrative remedies when complaint and administrative charge both pleaded management retaliated against her because she complained about her supervisor's sexual harassment).  The exhaustion analysis is confined to the formal charge itself.  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013).  The Court will not consider supplements or other documents that a plaintiff may have submitted apart from the charge.  *Id.* ("[I]t would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it") (quoting *Sloop v. Mem'l Mission Hosp. Inc.,* 198 F.3d 147, 149 (4th Cir. 1999)); *Merch. v. Prince George's Cnty.*, 948 F. Supp. 2d 515, 521–22 (D. Md. 2013) (intake questionnaire is not part of formal charge).

The Court concludes that the Charge sufficiently placed the EEOC on notice of the current Title VII claims.  *See* ECF No. 10-4.  The Charge accuses Marinucci[3] of harassing Braxton on account of her race.  *Id.*  It also states that CUA decreased Braxton's work hours dramatically after Braxton complained about Marinucci, and in retaliation for her having engaged in "protected activity."  *Id.*  Although not every averment in the Complaint is mirrored in the Charge, *compare* ECF No. 1 ¶¶ 9, 22–24 *with* ECF No. 10-4, EEOC had sufficient notice such to investigate Marinucci's mistreatment and alleged retaliation stemming from Braxton's reporting of the same.  *See Bryant*, 288 F.3d at 132.  Thus, the Court will not dismiss the claims for lack of exhaustion.

---

[3] The Charge identifies the harassing supervisor as Linda Mainutci.  ECF No. 10-4.  For purposes of the decision, the Court assumes that Braxton is referring to the same person identified as "Marinucci" in the Complaint.  *See* ECF No. 1.

### B. Hostile Work Environment claim (Count II)

CUA next argues that the hostile work environment claim must be dismissed for failure to make plausible that Braxton had been subjected to sufficiently adverse employment conditions on account of her race. ECF No. 10-1 at 24. For this claim to survive challenge, Braxton must plausibly aver that she experienced unwelcome race-based harassment that was sufficiently severe or pervasive as to alter her conditions of employment. *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 599 (D. Md. 2018) (citation omitted); *see also EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

The Complaint's facts, viewed most favorably to Braxton, are simply too thin to survive challenge. The allegations amount to this: Marinucci stated to others that Braxton is "toxic" and that Marinucci wants her "gone"; that for a non-specific period of time Marinucci "blocked" Braxton from seeing patients; and that when Braxton complained about Marinucci, CUA reduced her hours. ECF No. 1 ¶¶ 15–17, 18. But missing is any suggestion that such adverse treatment had anything to do with Braxton's race. Nor does the Complaint place a time frame on the alleged acts, or any indication of frequency or severity such that the Court could meaningfully assess what Braxton experienced. A single unadorned reference to Marinucci's "race driven ire," *id.* at ¶ 15, alone does not nudge this claim from the possible to the plausible. *Twombly*, 550 U.S. at 570. Thus, CUA's motion as to Count II is granted.

### C. Retaliation (Count III)

Turning to the retaliation claim, to survive challenge the Complaint must make plausible that: (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse action against the plaintiff; and (3) a causal relationship exists between the two. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). An employee's "general complaints of unfair treatment

are not protected activity." *Bowman v. Balt. City Bd. of Sch. Commr's*, 173 F. Supp. 3d 242, 248 (D. Md. 2016). Only those complaints that "communicate 'a belief that the employer has engaged in . . . a form of employment discrimination' based on a protected class" are actionable. *Chang Lim*, 310 F. Supp. 3d at 604 (quoting *Crawford v. Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 276 (2009) (citation omitted)).

CUA argues that the Complaint's barebones allegations do not make plausible any engagement in protected activity, or the necessary causal relationship between that activity and subsequent adverse employment action. ECF No. 10-1 at 29–30. Viewing the facts most favorable to Braxton, the Court must agree. The Complaint fails to aver any facts suggesting that Braxton complained about being mistreated *on account of her race*. *See* ECF No. 1; *Chang Lim*, 310 F. Supp. 3d at 604. Because generalized complaints against one's supervisor do not constitute protected activity, Braxton's retaliation claim fails for that reason alone. *See Bowman*, 173 F. Supp. 3d at 248.

Nor does the Complaint include any timeframes or estimated dates for *any* events, even those as basic as when Braxton worked at CUA. *See* ECF No. 1. Although Braxton need not precisely recount the dates in which relevant events occurred, she still must include something from which the Court may infer a causal connection between her complaints to human resources and supervisors, and CUA's adverse treatment of her. *Cf. Perkins*, 936 F.3d at 213; ECF No. 10-4 (Charge alleging that Braxton complained about Marinucci in February 2022 and CUA reduced her hours in August 2022). Because timing matters, the claim as pleaded cannot survive challenge. Count III must be dismissed.

### D. Dismissal with or Without Prejudice

Last, the Court must decide whether the Complaint should be dismissed with or without prejudice. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Braxton has agreed to dismiss her ADA claim without prejudice, and she seeks leave to amend the Complaint.[4] ECF No. 11 at 9. The Court grants the request to amend, but with a word of caution. The Complaint suffers from other defects beyond those already identified. Chief among them is that the averred facts lack any coherent organization. Events are described in gross generalities with little connection to Braxton's claims. The Complaint also omits such basic facts as the supervisory structure at the CUA site where Braxton worked, to whom she directly reported, and from whom she received employment related directives. And while Braxton avers that the Complaint lacks detail because CUA deleted relevant emails, it is doubtful that the emails provide the only source of information. *See* ECF No. 1 ¶ 20. Indeed, Braxton worked at CUA and bore the brunt of the claimed adverse action. She should, at a minimum, be able to provide a clear, plain statement of the facts supporting her claims should she choose to amend her Complaint. *See* Fed. R. Civ. P. 8(a)(2); *Ruffin*, 126 F. Supp. 3d at 526.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS CUA's motion to dismiss. All claims pertaining to Rios are dismissed with prejudice. Braxton's claims are dismissed without prejudice. Within 21 days from the date of this Opinion and Order, Braxton shall file an Amended Complaint that complies with this Court's local rules. Loc. R. 103.6. CUA shall have 14 days from the date of the filing of the amended complaint to answer or otherwise respond.

---

[4] Although Braxton requests dismissal of ADA claim without prejudice, she also makes clear that she had failed to exhaust administrative remedies. ECF No. 11 at 1. Thus, if the Amended Complaint repleads an ADA claim, it must include sufficient detail to demonstrate exhaustion.

Should Braxton fail to file an amended complaint by such time, the original Complaint will be dismissed with prejudice and without further notice. CUA's motion to sever is DENIED as moot.

A separate Order follows.

| | |
|---|---|
| December 18, 2023 | /s/ |
| Date | Paula Xinis<br>United States District Judge |